UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | No. 25-cr-31-LM-AJ-01-08 |
| FRANK HAYDEN, DANIEL HARRIMAN, FRANK NAPPO, RYAN STOUDT, ARCHIE IGNACIO, KATARINA GRUBLJESIC, STRAHINJA GRUBLJESIC, and ARVIND IYER, a/k/a S. ARAVINDAN, | ) ) ) ) ) ) ) | Count 1:  Conspiracy to Commit Wire Fraud (18 U.S.C. §§ 1349, 1343) |
| Defendants. | ) ) ) | |

INDICTMENT

The Grand Jury charges:

Background

1.      Slice MR ("Slice") was a market research firm incorporated in Texas with its principal office in Illinois.

2.      Op4G was a market research firm with its principal office in New Hampshire.

3.      SNWare was a market research firm with its principal office in India.

4.      Bright Analytic Consulting was a company with its principal office in Serbia.

5.      Defendant Frank Hayden was a resident of Illinois.  He was the Chief Executive Officer of Slice and formerly the Chief Operating Officer at Op4G.

6.      Defendant Daniel Harriman was a resident of Alabama.  He was the Chief Operating Officer of Slice and formerly the Director of Client Services at Op4G.

7.      Defendant Frank Nappo was a resident of New Hampshire.  He was formerly the Chief Executive Officer of Op4G.

8. Defendant Ryan Stoudt was a resident of Texas. He was formerly the Chief Revenue Officer of Slice and the Vice President of Sales at Op4G.

9. Defendant Archie Ignacio was a resident of New Jersey. He was formerly the Chief Operating Officer at SNWare and the Chief Information Officer and Executive Vice President at Op4G.

10. Defendant Katarina Grubljesic was a citizen and resident of Serbia. She was previously a resident of Illinois. She operated Bright Analytic Consulting and was formerly the Campaign Account Manager at Op4G.

11. Defendant Strahinja Grubljesic was a citizen of Serbia and resident of Brazil. He was the Panel Manger at Slice and formerly the Membership Director at Op4G.

12. Defendant Arvind Iyer, a/k/a S. Aravindan, was a resident of India. He was the Chief Growth Officer at SNWare.

<u>COUNT 1</u>
Conspiracy to Commit Wire Fraud
[18 U.S.C. §§ 1349, 1343]

13. Paragraphs 1 through 12 are realleged.

14. Beginning on an unknown date, but at least by January 1, 2014, and continuing through on or about October 17, 2024, in the District of New Hampshire and elsewhere, the defendants,

**FRANK HAYDEN,**

**DANIEL HARRIMAN,**

**FRANK NAPPO,**

**RYAN STOUDT,**

**ARCHIE IGNACIO,**

2

**KATARINA GRUBLJESIC,**

**STRAHINJA GRUBLJESIC, and**

**ARVIND IYER, a/k/a S. ARAVINDAN,**

and others known and unknown to the Grand Jury, did knowingly and willfully combine, conspire, confederate, and agree to commit wire fraud by devising and intending to devise a scheme and artifice to defraud market research clients, and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, and for the purposes of executing the scheme and artifice, transmitted and caused to be transmitted by means of wire communications in interstate commerce certain writings, signs, and signals in violation of Title 18, United States Code, Section 1343.

## Object of the Conspiracy

15.     It was the object of the conspiracy for the defendants to unlawfully enrich themselves by purportedly selling legitimate market survey data to clients of Slice and Op4G, when the survey data was in fact fabricated because the defendants and others working at their direction were taking surveys repeatedly and pretending to be real survey participants.

## Manner and Means

It was a manner and means of the conspiracy that:

16.     Slice and Op4G were market research firms.

17.     As part of their business model, Slice and Op4G maintained "panels" consisting of persons potentially eligible to take surveys.  Clients would hire Slice and Op4G to conduct market research surveys.  Slice and Op4G then solicited their panel members to take the surveys. Eligible persons who completed surveys would be paid a nominal amount for their time.  Slice and Op4G would collect and transmit the data to clients.

3

18.     Op4G was established in 2010 and closed in or about 2022.

19.     By 2014, senior leaders at Op4G, including Hayden, Harriman, and Nappo, decided that to increase company revenues they would engage in "trade," meaning the generation of fabricated survey data.

20.     Around this time, Stoudt, Ignacio, Katarina Grubljesic, and Strahinja Grubljesic were hired at Op4G.

21.     To generate the "trade," certain Op4G officers and employees, and their friends and family members, took market research surveys themselves repeatedly while purporting to be legitimate survey participants. The defendants referred to survey takers as "ants." Collectively, the "ants" were referred to as the "ant farm."

22.     In or around 2018, several individuals, including Nappo and Hayden, decided that Op4G should wind down its fraudulent survey-taking operation and move the fraud to a new company, which became Slice. However, Op4G continued to conduct fraudulent surveys for several more years while several defendants transitioned the fraudulent operation to Slice.

23.     Beginning on an unknown date, but by 2019 at the latest, Op4G began working with another market research company, SNWare. Iyer was the primary point of contact at SNWare. Op4G and later Slice paid SNWare to complete "ant" work for their market research clients.

24.     Slice and Op4G clients sometimes had safeguards in place to ensure that fraudulent data was not included in the survey results. For example, clients would throw out surveys that were completed too quickly or done from the same Internet protocol (IP) address.

25.     In order to conceal the scheme from clients, Hayden, Harriman, Stoudt, and Ignacio exchanged instructions with each other and "ants" designed to evade clients' quality

4

control safeguards.  For example, these instructions included how to answer survey screener questions, how long the "ant" should remain on the survey, and reminders to use virtual private network (VPN) services to conceal the "ant's" real IP address and use other unique IP addresses.

26.    Several "ants," including Hayden, Stoudt, Katarina Grubljesic, and Strahinja Grubljesic, fraudulently took large quantities of surveys themselves and received significant payment for their "ant" work.

27.    Several "ants" were assigned unique ID numbers to help track their progress.

28.    Each "ant" was paid money for each fraudulent survey taken.

29.    Harriman and Ignacio circulated Excel spreadsheets with multiple tabs matching each "ant's" ID number.  The tabs contained unique survey links to allow "ants" to more efficiently complete their work.

30.    The fraudulent surveys' topics ranged from consumer preferences to medical studies.

31.    Nappo administered payments from Slice and Op4G to "ants" and members of the conspiracy for repeatedly taking surveys and generating fraudulent data.

32.    Hayden, Harriman, Stoudt, and Strahinja Grubljesic were eventually employed at Slice and continued their "ant farm" work there.

33.    Nappo remained at Op4G.  However, through the end of 2021 Nappo administered payments to "ants" on behalf of Slice.

34.    At some point during the conspiracy, and by 2021 at the latest, Katarina Grubljesic founded her own company, Bright Analytic Consulting.  Bright Analytic Consulting employed "ants" and did work for Slice and Op4G.  Slice and Op4G paid Katarina Grubljesic through Bright Analytic Consulting.

35.     Both Iyer and Katarina Grubljesic oversaw teams of "ants" at SNWare and Bright Analytic Consulting, respectively, who took fraudulent surveys in exchange for payments from Slice and Op4G.

36.     The vast majority of surveys administered by Slice and Op4G over the past decade included falsified data as a result of "ant farm" work.  Slice and Op4G, collectively, billed their clients over $10 million for the fraudulent data.

All in violation of Title 18, United States Code, Sections 1349 and 1343.

NOTICE OF FORFEITURE

Upon conviction of the offense set forth in Count One of this Indictment, the defendants shall forfeit to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense, including a sum of money equal to the proceeds of the charged offenses.

All in accordance with 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c) and Rule 32.2(a), Federal Rules of Criminal Procedure.

A TRUE BILL

Dated:  April 9, 2025                          /s/ Foreperson
                                               FOREPERSON


JOHN J. MCCORMACK
ACTING UNITED STATES ATTORNEY


By:     /s/ Alexander S. Chen
        Alexander S. Chen
        Assistant U.S. Attorney